UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAUN PATRICK CONLEY, a/k/a SHAUN PATRICK MILLARD,<br><br>                    Plaintiff,<br><br>v.<br><br>ROBERT KUNAU; LEONARD BECK; JAREN ORTON; DAN SCHAEFER; WAYNE A. SCHENK; GEORGE WARRELL; DAVE C. PINTHER; JAROD THOMPSON; LT. SHANNON TAYLOR; STAFF SERGEANT BURNS; UNNAMED PERSONS; and DEPT. OF JUSTICE UNNAMED PERSONS IN THE U.S. MARSHALS SERVICE,<br><br>                    Defendants. | Case No. 4:24-cv-00517-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Shaun Patrick Conley's (a/k/a Shaun Patrick Millard) initial complaint because of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint and a Supplement. *See* Dkts. 16, 25.

A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or

malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed on some of the claims in the Complaint.

## 1.    Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure

12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d
1122, 1130 (9th Cir. 2000).

## 2.    Factual Allegations

Plaintiff is a federal prisoner incarcerated in Englewood, Colorado. The events
giving rise to Plaintiff's claims occurred when Plaintiff was detained in the Mini-Cassia
Criminal Justice Center ("MCCJC"), a jail operated by Minidoka County and Cassia
County in the State of Idaho. It appears Plaintiff was a pretrial detainee at that time.

Plaintiff complains of unconstitutional jail conditions. For example, Plaintiff claims
he was given a feces-covered mattress and that jail officials frequently forgot to take
Plaintiff to various jail programs. Plaintiff also alleges that he was forced to participate in
the jail's "Night Program," which required that certain inmates do all of their activities—
such as showering, cleaning, going to the library, and recreation—at night. This deprived
Plaintiff of sleep, sunlight, and "medically necessary" treatments from Plaintiff's oxygen
machine. Plaintiff submitted grievances on these issues, after which jail staff allegedly
began a campaign of harassment against Plaintiff. *Am. Compl.*, Dkt. 16, at 2–8.

Plaintiff names as Defendants several Minidoka and Cassia County commissioners,
sheriffs and deputies of both counties, and unidentified officials who instituted the Night
Program. Plaintiff also sues unidentified officers of the U.S. Marshal's Service, alleging
that the marshals transported him to the MCCJC, where Plaintiff suffered the injuries of
which he complains. *See* Dkt. 25.

3.    **Discussion**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. Liability under § 1983 "cannot be based on prison conditions beyond the control of a defendant." *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated

the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal

connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A.    *Due Process Claims*

Plaintiff's claims of unconstitutional conditions of pretrial detention are analyzed under the Due Process Clause of the Fourteenth Amendment. That clause is violated when the conditions to which a pretrial detainee is subjected amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The right to adequate conditions of detention includes the right to adequate medical treatment. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Conditions-of-detention claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id*. (internal quotation marks and alteration omitted).

Although the Court uses an objective standard in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (internal quotation marks omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of unconstitutional conditions of detention must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Plaintiff's Complaint, liberally construed, appears to state colorable conditions-of-detention claims against the named Defendants, and Plaintiff will be permitted to proceed on those claims at this time.

However, the Complaint does not state a plausible claim against the unidentified Defendants who are employed by the U.S. Marshal's Service. These individuals did nothing more than transport Plaintiff to the MCCJC. The marshals had no control over the conditions at the jail. *See Pinto*, 737 F.2d at 133. Accordingly, Plaintiff's claims against these Defendants will be dismissed.

As for Plaintiff's conditions-of-confinement claims against unidentified individuals who are responsible for the Night Program, the Court cannot effect service on unknown defendants. If Plaintiff learns of the identities of these Defendants through discovery, he may move to amend his complaint to identify them.[1]

### B.    Retaliation Claims

Plaintiff also relies on the First Amendment, which (among other things) protects individuals from government retaliation for the exercise of constitutional rights. *See Compl*. at 12.

The standard governing most constitutional claims of incarcerated individuals was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). In that case, the Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors that a court must consider when determining whether a prison regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open

---

[1] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–93.

The *Turner* analysis appropriately allows corrections officials substantial leeway in the management of their institutions because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

Although the *Turner* case arose in the prison context, its deferential analysis applies equally to claims brought by pretrial detainees. *Bull v. City and County of San Francisco,* 595 F.3d 964, 971 (9th Cir. 2010) (en banc). Because such detainees may not be punished, the Ninth Circuit has held that "the penological interests in punishment and rehabilitation" are inapplicable with respect to pretrial detainees. However, jail officials still have legitimate interests in ensuring security and safety in their institutions, and these interests must be considered when conducting a *Turner* analysis. *Id.* at 974 n.10; *see Bell v. Wolfish*, 441 U.S. 520, 547 n.28 (1979) ("There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order."). When considering

claims of pretrial detainees challenging jail regulations or policies, "courts must defer to the judgment of [jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012).

An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.").

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

embroiling themselves in every disciplinary act that occurs in state penal institutions.")
(internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal
connection between a defendant's retaliatory animus and [the plaintiff's] subsequent
injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory
motivation is not established simply by showing an adverse action by the defendant *after*
protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City
of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest
on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because
of this'"). Therefore, although the timing of an official's action can constitute
circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly
after the official learned about an inmate's exercise of protected conduct—there generally
must be something more than mere timing to support an inference of retaliatory intent.
*Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

The Complaint plausibly alleges only that jail staff harassed Plaintiff after Plaintiff
submitted jail grievances. This is merely an allegation about the timing of Defendants'
actions and, as such, is insufficient to state a colorable retaliation claim. *See Huskey*, 204
F.3d at 899; *Pratt*, 65 F.3d at 808. Accordingly, Plaintiff's retaliation claims will be
dismissed.

### C.    *Sixth Amendment Claims*

Plaintiff also asserts claims under the Sixth Amendment. *Compl*. at 12. However,
that amendment—which protects a criminal defendant's right to a speedy and public trial

by an impartial jury, the right to confrontation and compulsory process, and the right to the assistance of counsel—is not implicated by the allegations in the Complaint. Therefore, Plaintiff's Sixth Amendment claims must be dismissed.

### D.    Eighth Amendment Claims

Plaintiff relies on the Eighth Amendment as well as the basis for his claims. *Compl.* at 12. However, because it appears Plaintiff was a pretrial detainee at the time his claims arose, the Eighth Amendment—which applies to convicted prisoners—seems not to apply. If Plaintiff was, in fact, a convicted inmate when his claims arose, then Plaintiff's conditions of confinement claims would indeed be analyzed under the Eighth Amendment instead of the Fourteenth Amendment. This issue may be raised by the parties at a later date.

## 4.    Request for Appointment of Counsel

Plaintiff also seeks appointment of counsel. *Compl.* at 16. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved.

*Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

## 5.    Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that Plaintiff's conditions-of-confinement claims are plausible, meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

### IT IS ORDERED:

1.    Plaintiff's Motion for Status and Supplement (Dkt. 25) is GRANTED IN PART, to the extent that the Court has considered both Plaintiff's Complaint and Supplement in its review under 28 U.S.C. §§ 1915 and 1915A.

2.    Plaintiff's request for appointment of counsel (contained in the Complaint)

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

is DENIED.

3.      Plaintiff may proceed on his conditions-of-confinement claims against Defendants Kunau, Beck, Orton, Schaffer, Schenk, Warrell, Pinther, Thompson, Taylor, and Burns. All other claims are DISMISSED without prejudice, and all other Defendants are TERMINATED as parties to his action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.

4.      Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Amended Complaint (Dkt. 16), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

a.      **McCord Larsen, Cassia County Prosecuting Attorney, 1459 Overland Ave., 3rd Floor, P.O. Box 7, Burley, ID 83318**, on behalf of the Cassia County Defendants.

b.      **Lance Stevenson, Minidoka County Prosecuting Attorney, 715 G Street, P.O. Box 368, Rupert, ID 83350**, on behalf of the Minidoka County Defendants.

5.      Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

6.      If Plaintiff receives a notice indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

7.      After Defendants appear, the Court will issue an order governing the pretrial schedule in this case, including disclosure and discovery. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

8.      Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

9.     The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

10.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

13.    Pursuant to General Order 324, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the

proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: February 6, 2026

David C. Nye
U.S. District Court Judge